## Capinski's Estate

*Federico F. Mauck,* of *Wright, Mauck & Hawes,* for accountant.

*Charles H. Brunner, Jr.,* for Montgomery County Institution District.

HOLLAND, P. J., March 16, 1945.—Decedent died on February 19, 1943, intestate, and letters of administration on her estate were granted to the accountant

on March 1, 1943. Testatrix was unmarried and left no issue surviving. Her next of kin at the time of her death was a sister, Barbara Yarosz. The account shows a balance for distribution of $125.18. The estate is insolvent and there is no transfer inheritance tax due the Commonwealth.

The accountant has claimed credit in the account for funeral bill of decedent paid Lawrence F. O'Brien in the sum of $300. Exceptions have been filed to this item by the Montgomery County Institution District, a creditor, in the sum of $706.87, for maintenance of decedent as a public charge at the Montgomery County Home from July 31, 1941, to the date of her death on February 19, 1943. Lawrence F. O'Brien, the undertaker, has also presented a claim for balance of funeral bill claimed to be due him of $207.

From the facts stipulated by counsel at the audit, it appears that decedent died an inmate of the Montgomery County Institution Home. Shortly after her death there was discovered a bank deposit in her name in the Montgomery National Bank in Norristown in the sum of $554.31, which is the subject of the account filed. The existence of this bank account of decedent was unknown either to the authorities of the institution district or to any of the next of kin of decedent until after her death. The day following the death of decedent, the secretary of the institution district notified the undertaker that the institution district would not be liable for burial expenses of decedent in excess of the sum of $200, would oppose the allowance of more than that for the burial expenses, and would claim the balance of the estate in excess of that amount. On February 29, 1943, prior to the burial of decedent, the same notice was given to Chester S. Miezckowski, the husband of a niece of decedent, who later became the administrator. Miezckowski agreed to become personally responsible to the undertaker for whatever burial costs were incurred in excess of the amount allowed out of decedent's

estate. He was advised by his attorney that, in an insolvent estate, burial expenses are allowed in the sum of $300 and that there was no accepted law restricting the funeral expense allowance to $200 in instances where deceased was an inmate of the institution district home, and his estate was subsequently insolvent by reason of the claim of the institution district for maintenance. The custom of the Montgomery County Institution District is to allow only $200 for funeral expenses.

In the absence of proof of extraordinary circumstances, this court, frequently of its own motion, has refused to allow more than $300 for the burial expenses of an insolvent decedent, even in cases where decedent died possessed of a large gross estate, because it has been the law of this State, as announced by our appellate and inferior courts for considerably more than half a century, that the cost of the funeral of an insolvent decedent, being at the expense of his creditors, must be held to the absolute minimum consistent with public decency and respect for the dead.

In the present case, decedent had been maintained in the county home at public expense for a year and a half prior to her death. This fact was well known to the undertaker and the person who contracted for the funeral (the present accountant) before funeral arrangements were made. Had decedent also been buried at public expense, as is likely that she would have been had it not been for this money in bank, the maximum which could have been allowed for her burial would have been from $50 (Act of April 20, 1921, P. L. 167, sec. 1, 35 PS §1092) to $75 (Act of June 24, 1937, P. L. 2017, sec. 403, as amended by Act of June 9, 1939, P. L. 308, 62 PS §2303). Had decedent disclosed the existence of this bank deposit to the institution district authorities upon her entry into the county home or subsequently, the district, under the statutory authority granted to it, would have appropriated sums from time

to time to pay the cost of decedent's maintenance, until there remained but $200, which would have been reserved as a fund for her burial. But she concealed it, whether wilfully or not, and we feel that it would be a mistake if we were to sanction such concealment and permit it to afford decedent a more elaborate funeral than she would otherwise have received. We may say that the undertaker and Mr. Miezckowski were not legally bound by the warning given them by the secretary of the institution district prior to incurring the expense of the funeral, but such warning, though gratuitous, should have served to cause them to consider the last-mentioned circumstance very carefully. Inasmuch as they chose to disregard the warning (and although, in the case of the accountant, the choice was based upon the opinion of able counsel) and to assume the risk for the larger expenditure, the responsibility is entirely their own, and they will have to adjust the penalty between themselves. For the reasons above given, we sustain the exception filed by the institution district, and the credit of $300 taken in the account for funeral expenses of decedent is reduced to $200, and the accountant is surcharged with the difference of $100. For the same reasons, the claim of Lawrence F. O'Brien for the sum of $207, balance of funeral bill, is refused.

Under paragraph 9 of the petition for adjudication, the following appears:

"It is to be queried, with the institution district being an arm of the Commonwealth, is it not subordinated in payment as is the Commonwealth to all other debts of the decedent."

The answer is, obviously, in the negative, because the institution district is exclusively a part of the county government, though separately incorporated. The Act of June 24, 1937, P. L. 2017, which created the institution districts, in its general provisions, in section 301, provides that the district shall be co-extensive in area with the county; section 302, that the commissioners

of each county shall be the executive and administrative officers, and the county treasurer shall be its treasurer; section 306, that the commissioners of each county shall have the power to appoint, remove, and fix the compensation of all necessary employes; and, section 307, that they shall have the power to levy and collect taxes for the district.

The net ascertained balance for distribution is awarded to the Montgomery County Institution District on account of its claim as presented.

The account is confirmed, and it is ordered and decreed that Chester S. Miezckowski, administrator as aforesaid, forthwith pay the distributions herein awarded.

And now, March 16, 1945, this adjudication is confirmed nisi.